## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SAVANA MILLER, | ) | |
| | ) | |
| PLAINTIFF, | ) | Civil Action File No. |
| | ) | |
| v. | ) | |
| | ) | |
| AXIOM STAFFING GROUP, | ) | |
| AND  KUBOTA MANUFACTURING | ) | |
| OF AMERICA CORPORATION | ) | |
| | ) | JURY TRIAL DEMANDED |
| DEFENDANTS. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Savana Miller ("Ms. Miller" or "Plaintiff") files this Complaint against Defendant Axiom Staffing Group ("Axiom") and Kubota Manufacturing of America Corporation ("KMA" or collectively "Joint Employers" or "Defendants"). Plaintiff respectfully shows this Court as follows:

## INTRODUCTION

1.     This action is for sexual harassment, and retaliation arising under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e, *et seq*. ("Title VII"), and related state-law claims.  Plaintiff seeks declaratory and injunctive relief, back pay, front pay, compensatory damages, punitive damages and attorney's fees

1

and costs.  Plaintiff further invokes pendant jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under the laws of the State of Georgia for assault, battery, negligent supervision, and negligent retention.

## JURISDICTION AND VENUE

2.    Ms. Miller's Title VII claims present federal questions over which the Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f)(3).

3.    This Court has pendant jurisdiction over Ms. Miller's claims arising under the laws of the State of Georgia pursuant to 28 U.S.C. § 1367.

4.    This Court is an appropriate venue for all of Ms. Miller's claims under 28 U.S.C. § 1391(b) and 42 U.S.C. §2000e-5(f)(3), because all of the parties reside within the Northern District of Georgia, and a substantial majority of events giving rise to Ms. Miller's claims occurred in this judicial district.

## ADMINISTRATIVE PROCEEDINGS

5.    Ms. Miller filed a timely charge of sexual harassment and retaliation with the Equal Employment Opportunity Commission ("EEOC").  A true and accurate copy of the Charge is attached hereto as Exhibit "A" and is incorporated herein.

6.    Ms. Miller received a notice of right to sue from the EEOC within ninety (90) days of filing this Complaint and has complied with all other conditions

precedent to the institution of this lawsuit.  A true and accurate copy of the Notice of Right to Sue is attached hereto as Exhibit "B" and is incorporated herein.

## **PARTIES**

7.    Ms. Miller is female.

8.    Ms. Miller is a citizen of the United States.

9.    Ms. Miller is a resident of the State of Georgia.

10.    Ms. Miller was a joint employee of Joint Employers at all times material to this Complaint.

4.    Ms. Miller is a member of a protected class under Title VII.

5.    Axiom is licensed to do business in Georgia.  This defendant transacts business in the Northern District of Georgia.

6.    Axiom is subject to this Court's jurisdiction and may be served with process through its registered agent for service of process**.**

7.    KMA is a corporation licensed to do business in Georgia.  KMA transacts business in the Northern District of Georgia.

8.    KMA is subject to this Court's jurisdiction and may be served with process through its registered agent for service of process.

## STATEMENT OF FACTS

9.      Joint Employers are subject to the anti-discrimination and anti-retaliation provisions of Title VII.

10.      Joint Employers each individually employ 15+ employees for each working day in each of twenty or more calendar weeks from 2020 throughout 2021.

11.      Collectively Joint Employers employ well over 15 employees for each working day in each of twenty or more calendar weeks throughout 2021.

12.      At all times material to this Complaint, Joint Employers had control over both Plaintiff's employment and the terms and conditions thereof.

13.      Joint Employers are true joint employers.  Upon information and belief, each Defendant had authority to exercise control over the terms and conditions of Plaintiff's employment, specifically but not limited to Plaintiff's job assignments, hours, pay, benefits, promotional opportunities, and each had the ability to hire and fire Plaintiff.

14.      Plaintiff began employment with Axiom as a temporary worker.

15.      Plaintiff was told by Axiom that the assignment at KTM could be a long-term assignment, or a permanent assignment if she did a good job.

16.      Ms. Miller is approximately 5'2" and she weights about 102 pounds.

17.      On or around April 5 2021, Axiom assigned Ms. Miller to work for KMA.

18.     Plaintiff's supervisor was Johnathan Tow.

19.     At the worksite she was supervised by both Defendants.

20.     Unbeknownst to Plaintiff before she started, KMA's worksite condoned sexual harassment in certain departments.  For example, men at least in certain areas commonly made crude sexual comments, and aggressively pursued sexual relationships with women.

21.     Upon information and belief, this pervasive sexual harassment was known to Defendants, and they failed to take corrective action to stop the pervasive sexual harassment.

22.     Shortly after Plaintiff started working at the KMA worksite she began to be sexually harassed by a hispanic man who works for Defendant Axiom (the "Harasser").  The Harasser was approximately 6 feet tall and weighed about 200 points.  The Harasser was much taller, heavier, and stronger than the Plaintiff.

23.     Plaintiff feared the Harasser, and she feared for her safety around the Harasser.

24.     This sexual harassment occurred daily, and often multiple times a day. The harassment included staring at Plaintiff, invading Plaintiff's personal space, often trying to talk to Plaintiff, not respecting Plaintiff's requests to be left alone, etc.

25.     For example, Plaintiff was walking to her working station when the Harasser came up behind her and stood very close to her.  The Harasser said, "hey I was looking for you at break and I couldn't find you.  I looked in the break room and the parking lot…" The Harasser's body language and behavior made Plaintiff uncomfortable.  Plaintiff didn't know why the Harasser was looking for her as they had never talked before, and she didn't know him.   Plaintiff reported this interaction to her supervisor Mr. Tow, but upon information and belief, Mr. Tow took no action. Specifically, Mr. Tow would say something like, "is that it?"  It's a free country. What do you want me to do?

26.     On another occasion, Plaintiff told her female co-worker, that she was tired, and the Harasser said, "You can come back to my house and take a nap.  I have Apple TV, and all these movie streaming platforms, etc.  The harasser continued, to say that "I've had curvy girls all my life I wanna try something new" referring to Plaintiff's slender appearance.  This made Plaintiff uncomfortable.   She let the Harasser that she was not interested, but he didn't appear to care.  Plaintiff reported this interaction to her supervisor, Mr. Tow, but upon information and belief, Mr. Tow took no action.

27.     Another example is on break, Plaintiff was sitting in the break room trying to eat.  Plaintiff had her headphones on to avoid having the Harasser come up to talk to her.   The Harasser grabbed a chair and sat right down beside Plaintiff and

kept trying to talk to her even after the Plaintiff had asked him to leave her alone. Plaintiff reported this interaction to her supervisor, Mr. Tow, but upon information and belief, Mr. Tow took no action.

28.    Another example is when Plaintiff got, "Tugger" certified so she got to drive the Tugger machine around and put things away on the opposite side of the building.  Plaintiff enjoyed this as she didn't have to be near the Harasser.  Plaintiff began to take her breaks outside in an area where no one goes so she didn't have to worry about the Harasser finding her.    However, Plaintiff's supervisor Mr. Tow took her off the Tugger a few weeks after she started working on the Tugger.  Mr. Tow didn't articulate why she was taken off the tugger.  Plaintiff protested being taken off the Tugger saying that she enjoyed the Tugger because it got her away from the Harasser and Mr. Tow was not doing anything about her complaints of sexual harassment.

29.    Despite Plaintiff's complaint, Plaintiff was put right back where she had been working with the Harasser.

30.    When Plaintiff realized, she was going to have to work with the Harasser again, she met with her supervisor, Mr. Tow.  Plaintiff told Mr. Tow that she was "very uncomfortable working with the Harasser, and she feared for her safety".  Mr. Tow seemed to ignore and make light of Plaintiff's complaints.   Mr.

Tow said he said would talk to the Harasser, but Plaintiff does not think he did, as the behavior from the Harasser didn't change.

31.    Plaintiff told Mr. Tow that the Harasser's behavior was affecting her work performance, and that she was late sometimes, because she didn't want to report to work when she would be alone with the Harasser.

32.    Instead of investigating the incident of sexual harassment, or protecting the Plaintiff from sexual harassment, Mr. Tow on behalf of the Defendants terminated the Plaintiff.

33.    Plaintiff was terminated by the Defendants on May 21, 2021.

34.    Following Plaintiff's complaint of sexual harassment, she was not recalled to the KMA job site any further and was eventually she was no longer placed on any jobs by Axiom.

35.    Neither Joint Employer ever articulated any reason for Plaintiff not receiving further work at KMA or any other long-term assignment.

36.    After Plaintiff's complaint of sexual harassment, she was placed on a few short-term assignments by Axiom, but she was not given a long-term assignment with steady expectation of pay that she had with the KMA job.

37.    Plaintiff lost significant pay because of her complaint of sexual harassment.

## COUNT I
## <u>Sexual Harassment in Violation of Title VII</u>

38.     Plaintiff incorporates by reference the preceding Paragraphs as if fully restated herein.

39.     As a woman, Plaintiff is a member of protected groups.

40.     As detailed above, throughout her employment with Joint Employers, Plaintiff was subjected to sexual harassment and hostile work environment by Joint Employers' employees and management.

41.     All the above conduct by Defendants' employees and management were unwelcome, offensive, and intimidating to Plaintiff, and open and obvious in the workplace.

42.     Plaintiff complained that the sexually harassing conduct was unwelcome.

43.     At all times relevant to this action, Defendants knew or should have known of the sexual harassment endured by Plaintiff and the existence of a sexually harassing work environment and failed to meaningfully remedy the workplace environment to protect Plaintiff.

44.     Defendants willfully and wantonly disregarded Plaintiff's rights, were undertaken in bad faith, and constitute unlawful intentional gender and race discrimination in violation of Title VII.

45.    As a result of Defendants' unlawful actions, Plaintiff has suffered emotional distress, inconvenience, loss of income and benefits (past and future), humiliation, and other indignities.  Plaintiff seeks all damages available.

**COUNT II**
**Retaliation in Violation of Title VII**

46.    Plaintiff incorporates by reference the preceding paragraphs as if fully restated herein.

47.    Plaintiff engaged in protected activities protected under Title VII by making complaints of sexual harassment.

48.    As a result of her complaints, Plaintiff suffered adverse employment actions including, but not limited to removal from the KMA job and ultimately termination.

49.    As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory actions, Plaintiff has suffered lost wages and other benefits of employment, significantly diminished employment opportunities, inconvenience, loss of income, and emotional distress, including but not limited to outrage, shock, and humiliation because she exercised her rights under Title VII.

50.    Defendants willfully and wantonly disregarded Plaintiff's rights, and Defendants' discrimination and retaliation against Plaintiff was undertaken in bad faith.

51.     As a result, Plaintiff is entitled to both equitable and monetary relief in all forms provided by law.

## COUNT III
### Assault

37.     Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

38.     Plaintiff's Hispanic co-worker's behavior constitutes civil assault.

39.     Defendants knew that Plaintiff was likely to be subjected to sexually harassing comments and/or fear of touching's due to the open and obvious nature of Defendants' employees conduct in the workplace.

40.     Defendants failed to take prompt and appropriate remedial steps to protect Plaintiff from sexual harassment and assault and battery.

41.     Because of Defendants' negligent supervision and retention, Defendant ratified the co-worker's behavior.

42.     Plaintiff suffered damages in the form of lost wages and benefits, significantly diminished employment opportunities, and emotional distress.

## COUNTS IV AND V
### Negligent Retention and Negligent Supervision

43.     Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

44.     At all times material to this Complaint, Defendants owed a legal duty of care toward their employees to exercise reasonable care and prudence in the hiring, supervision, and retention of its employees.

45.     By and through the conduct, actions, and malfeasance cited above, Defendants breached the above-described legal duties of care that it owed to Plaintiff.

46.     Defendants knew that Plaintiff was being subjected to sexually harassing comments and harassing conduct because of Plaintiff's repeated complaints of sexual harassment and the open and obvious nature of Defendants' employees' conduct in the workplace.

47.     Defendants failed to take prompt and appropriate remedial steps to protect Plaintiff from sexual harassment.

48.     Because of Defendants' negligent supervision and retention, Plaintiff suffered damages in the form of lost wages and benefits, significantly diminished employment opportunities, and emotional distress.

**WHEREFORE**, Plaintiff demands an arbitration and the following relief:

(a)     cause process to issue;

(b)     issue a declaratory judgment that Defendants' acts, policies, practices, and procedures complained of herein violated Plaintiff's rights under Title VII and state law;

(c)    grant Plaintiff a permanent injunction enjoining Defendants, their officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment practice or policy which discriminates against the Plaintiff and others similarly situated because of the exercise of their rights under Title VII or because of their participation in this lawsuit;

(d)    grant Plaintiff judgment in her favor and against Defendants under all Counts of this Complaint;

(e)    order Defendants to make the Plaintiff whole by providing for her out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendants' unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

(f)    grant to Plaintiff liquidated damages for Defendants' willful violations of Title VII;

(g)    grant to Plaintiff reasonable attorney's fees together with any and all other costs associated with this action as provided by Title VII and state law violations; and

(h)    grant plaintiff all her compensatory and punitive damages, and all other damages available by law.

(i)     grant such additional relief as the adjudicating officer(s) deem proper

and just.

Respectfully submitted on this 14th day of April, 2022.

/s/ J. Stephen Mixon
J. Stephen Mixon
Georgia Bar No. 514050

THE MIXON LAW FIRM
1691 Phoenix Blvd., Suite 150
Atlanta, Georgia 30324
Phone: 770-955-0100
steve@mixon-law.com